## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

TAMMY L.,[1]

                                  Plaintiff,

      v.                                6:23-CV-1545 (MJK)

COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.

PETER W. ANTONOWICZ, ESQ., for Plaintiff
KRISTINA D. COHN, Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

### MEMORANDUM-DECISION AND ORDER

Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, denying his application for benefits. (Dkt. No. 1). This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. No. 4). Both parties filed briefs (Dkt. Nos. 14, 16), which the court

---

[1]  In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Decision And Order will identify the plaintiff using only her first name and last initial.

1

treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.

## I.  **PROCEDURAL HISTORY**

On April 28, 2021, plaintiff filed an application for Social Security Disability Insurance Benefits ("DIB"), alleging disability beginning November 23, 2020. (Administrative Transcript ("T.") 253-59). Plaintiff's applications were denied initially on September 10, 2021, and upon reconsideration on April 20, 2022. (T. 126-30, 133-43). On November 16 2022, Administrative Law Judge ("ALJ") Gretchen Greisler conducted a hearing during which plaintiff and vocational expert ("VE") Edmond Calandra testified. (T. 49-79). On December 5, 2022, the ALJ issued a decision denying plaintiff's claim. (T. 11-32). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on October 19, 2023. (T. 1-3).

## II.  **GENERALLY APPLICABLE LAW**

### A.    **Disability Standards**

To be considered disabled, a plaintiff seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013*)*; *see also* 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920.

The plaintiff has the burden of proof to establish a disability at the first four steps. *Selian,* 708 F.3d at 418. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden shifts to the Commissioner to prove the final step. *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court "is limited to whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012); *see also Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera,* 697 F.3d at 151.  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.* However, this standard is a very deferential standard of review "even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also Selian,* 708 F.3d at 417 ("the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn") (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains

substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *see also Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   THE ALJ'S DECISION

The ALJ determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since November 23, 2020, the alleged onset date. (T. 13). At step two, the ALJ found that plaintiff had the following severe impairments: osteoarthritis, diabetes mellitus, and peripheral neuropathy. (T. 14). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (T. 19-20).

Next, the ALJ found that plaintiff had the residual functional capacity ("RFC")

> to perform the exertional demands of sedentary work as
> defined in 20 CFR 404.1567(a), except the claimant has the
> following additional nonexertional limitations: can occasionally
> stoop, balance, crouch, crawl, kneel, climb stairs, and climb

> ramps; cannot climb ladders, ropes, or scaffolds; cannot work at
> unprotected heights; can frequently handle, finger, and feel; and
> cannot use foot controls.

(T. 20).

In making the RFC determination, the ALJ stated that she considered all of plaintiff's symptoms and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (T. 20). The ALJ further noted that she fully considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. (*Id.*). After considering plaintiff's statements regarding her symptoms, along with the other evidence of record, the ALJ concluded that although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (T. 21).

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (T. 29). Finally, at step five, considering the plaintiff's age, education, and RFC, the ALJ relied on the testimony of the VE and the Medical Vocational Rules in determining that plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy that he could perform. (T. 29-30). Accordingly, the ALJ concluded that plaintiff was not disabled. (*Id.*).

IV.    **ISSUES IN CONTENTION**

Plaintiff argues that remand is warranted because the ALJ's determinations are not supported by substantial evidence and the ALJ failed to apply the correct legal standards. Specifically, plaintiff contends that the ALJ erred by:

1)    crafting an RFC that is not supported by substantial evidence; and

2)    failing to properly assess the consistency of plaintiff's symptoms. (Amended Plaintiff's Brief ("Pl. Br.") pgs. 10-22) (Dkt. No. 14).

Defendant contends that the Commissioner's determination should be affirmed because there is substantial evidence to support ALJ's RFC findings. (Defendant's Brief ("Def. Br.") pgs. 8-21) (Dkt. No. 18).

For the reasons stated below, the court finds that the ALJ's RFC determination was supported by substantial evidence, and that she properly considered the plaintiff's subjective symptoms within the context of the record evidence.  Accordingly, remand is not warranted on the bases raised by plaintiff, and the Commissioner's decision denying disability is affirmed.

V.    **RFC/EVALUATION OF MEDICAL EVIDENCE**

A.    **Legal Standards**

1.    **RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . ." A "regular

and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *see also Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities. *See Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *see also Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)); *LaPorta*, 737 F. Supp. at 183; *Stephens,* 200 F. Supp. 3d at 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a

8

narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *See Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7); *see also Angelo Michael G. v. Kijakazi*, No. 6:22-CV-00892 (TWD), 2023 WL 4763792 (N.D.N.Y. July 26, 2023) (quoting *Ferraris*, 728 F.2d at 587). "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 49 n.3 (2d Cir. 2021) (citing 20 C.F.R. § 404.1527 (d)(2)).

Furthermore, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record"); *Cage v. Comm'r of Soc. Sec.,* 692 F.3d 118, 122 (2d Cir. 2012) ("In our view, we defer to the Commissioner's resolution of conflicting evidence.").

### 2.    Evaluation of Medical Opinion Evidence

According to the applicable regulations, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." *See* 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)(2017). The ALJ must "articulate how [he or she] considered the medical opinions" and "how persuasive

[he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).

The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853. An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1); *see also Carmen M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The 'supportability' factor asks how well a medical source supported their opinions with objective medical evidence and supporting explanation.")

The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§

404.1520c(c)(2), 416.920c(c)(2); *see also Vellone v. Saul*, No. 1:20-CV-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("Simply put, consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record.") *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021).

An ALJ must also consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### B.    Analysis

Plaintiff contends that the ALJ improperly found the opinions of state examiners Drs. Zitto and Miller more persuasive than the opinion rendered by her treating physician. Plaintiff also contends that the RFC was not supported by substantial evidence. The court disagrees.

A non-examining state agency consultant's opinion may be relied upon where it is supported by other record evidence. *See Hansen-Nilsen v. Comm'r of Soc. Sec.,* No. 5:15-CV-1528 (GTS/WBC), 2017 WL 913933, at *5 (N.D.N.Y. Feb. 7, 2017) (citing *Frye ex rel. A.O. v. Astrue*, 485 Fed. App'x. 484, 487 (2d Cir. 2012)) ("The report of a

State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."), *report recommendation adopted* 2017 WL 913639 (N.D.N.Y. Mar. 6, 2017); *see also Swan v. Astrue*, No. 09-CV-486-S, 2010 WL 3211049, at *5 (W.D.N.Y. Aug. 11, 2010) ("State agency medical consultants are qualified experts in the evaluation of disability claims and as such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").  Here, the ALJ correctly applied the regulatory factors of consistency and supportability in finding that the opinions of Drs. Miller and Zito were persuasive because of their field of expertise, knowledge of the agency's requirements for disability, and the ability to review records from medical sources before rendering an opinion. (T. 24). Drs. Miller and Zito both opined that plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk (with normal breaks) for a total of four hours, and sit (with normal breaks) for a total of approximately six hours. (T. 88, 105-06). Notably, both doctors opined that plaintiff did not have any manipulative limitations. (T. 89, 107). While the ALJ'S RFC incorporated greater limitations than those opined by Drs. Miller and Zito, their assessments provided substantial evidence for the ALJ's RFC determination. *See Ramsey v. Commissioner of Social Security*, 830 Fed. App'x 37, 39 (2d Cir. 2020) (holding that the ALJ appropriately deviated from the consultative examiners' recommendation to decrease claimant's RFC based on other evidence in the record, "exemplified by the ALJ's

determination that claimant should not interact with the public"); *see also Stefanie F. v. Comm'r of Soc. Sec.*, No. 23-CV-617, 2024 WL 2017316, at *4 (W.D.N.Y. May 7, 2024) ("As a general matter, where an ALJ imposes a limitation in [the] RFC that is more restrictive than the relevant medical opinions, there is no error and thus no grounds for remand with respect to that limitation.") (citation and internal quotation marks omitted).

Plaintiff asserts that the "reports and opinions" of Drs. Miller and Zito "are stale as they were obtained before the bulk of the medical evidence was acquired" and because "neither of these sources reference the EMG/electrodiagnostic nerve conduction study which confirmed the presence of bilateral polyneuropathy and mild-to-moderate bilateral capral tunnel syndrome." (Pl. Br., pg. 12). "[A] medical opinion is not necessarily stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." *See Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (finding physician's year-old opinion not stale because subsequent opinions and treatment notes were consistent with physician's opinion). Further, an ALJ does not "commit error in relying on an opinion from a source who did not review the entire record [where the] Plaintiff fail[s] to provide evidence from the record which would contradict the opinion." *Hansen-Nilsen*, No. 5:15-CV-1258 (WMC), 2017 WL 913933, at *6 (N.D.N.Y. Feb. 7, 2017). Plaintiff bears the burden of showing "that his physical condition deteriorated

after the medical opinions were provided." *Christopher C. v. Comm'r of Soc. Sec.*, No. 20-CV-01774, 2022 WL 16797970, at *4 (W.D.N.Y. Nov. 8, 2022) (quoting *Vincent B. v. Comm'r of Soc. Sec.*, 561 F. Supp 3d 362, 367 (W.D.N.Y. 2021)).

Here, plaintiff has not met such a burden. Treatment notes generated after Dr. Miller's August 23, 2021 opinion show that plaintiff reported an absence of "muscle aches/pains of extremities" or "joint pain." (T. 566). Plaintiff also exhibited "good range of motion in all major joints[.]" (*Id.*). Similarly, treatment notes from Boonville Family Care after Dr. Zito's March 4, 2022 opinion are bereft of any indication that plaintiff was experiencing pain in her extremities or that her condition had deteriorated. (T. 577-79). March 17, 2022 treatment notes from Boonville Family Care indicate that plaintiff walked with a normal gait and without assistance, that plaintiff had full range of motion in her upper and lower extremities, and that her upper and lower extremities were normal to inspection. (T. 589). Plaintiff also denied any joint pain or weakness. (T. 587). Based on the longitudinal record, plaintiff has failed to establish that the opinions of Drs. Zito and Miller were "stale" or that the ALJ's reliance on their opinions was not supported by substantial evidence.

Next, plaintiff maintains that the opinions of Drs. Zito and Miller are "stale" because they did not account for the June 22, 2021 EMG and Electrodiagnostic Study Report ("EMG Study"). (Pl. Br., pg. 6). However, their failure to review the EMG Study was, at most, harmless error. The ALJ explicitly considered the findings of the

EMG Study in crafting the RFC, noting the "mild to moderate carpal tunnel syndrome of [plaintiff's] dominant right upper extremity and mild carpal tunnel syndrome of her left upper extremity." (T. 24). The ALJ also noted that "[t]here was no more than mild sensorimotor polyneuropathy underlying the claimant's condition." (*Id.*). These findings constitute substantial evidence for the ALJ's RFC that plaintiff could "frequently handle, finger, and feel." (T.20); *see Elyssa C. v. Commissioner of Soc. Sec.*, No. 1:19-CV-1632 (CH), 2021 WL 677926, at *7 (N.D.N.Y. Feb. 22, 2021) ("[A] moderate limitation is not inconsistent with a finding that an individual can engage in frequent, but not constant activity."); *see also Elliott-Sims v. Saul*, No. 3:19-CV-884, 2020 WL 13994903, at *15 (D.C.T. Oct. 7, 2020) (holding that an EMG showing  mild carpal tunnel syndrome was consistent with the ALJ's finding that plaintiff could perform frequent handling and fingering).

Further, plaintiff complains that in crafting the RFC, the ALJ did not rely on the opinions of Dr. Tangel and NP Olmstead, plaintiff's treating providers. (Pl. Br., pgs. 17-19). However, the ALJ considered and properly rejected the opinions of Dr. Tangel (Tr. 557-58) and NP Olmstead (T. 544-46), both of whom rendered their respective opinions in a check-box form with limited explanations for their findings. *See Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022) ("[A] treating physician's medical opinion is not entitled to controlling weight where it is provided in a check-box form and is unaccompanied by meaningful medical evidence in the administrative record."); *see*

*also Klodzinski v. Astrue*, 274 F. App'x 72, 73 (2d Cir. 2008) (finding a standardized multiple-choice form completed by a treating physician only marginally useful); *Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004) ("The standardized form . . . is only marginally useful for purposes of creating a meaningful and reviewable factual record.").

Dr. Tangel opined that plaintiff could occasionally lift and carry five pounds or less, was unable to lift and carry any weight on a frequent basis, could stand and/or walk for two hours or less in an eight-hour workday, could not use her hands, and could not stoop, kneel, crouch, or crawl. (Tr. 557-58). The ALJ ascribed "little persuasiveness" to Dr. Tangel's opinion and supportably concluded her opined limitations were inconsistent with the longitudinal record. Specifically, the objective findings of record note that plaintiff had normal range of motion throughout her extremities, an intact gait, normal neurological findings, normal sensation, intact reflexes, and no muscle tenderness. (T. 350, 368, 392, 432, 589, 613). Physical exams by Dr. Tangel and NP Olmstead reported normal extremities, and normal bilateral strength in plaintiff's upper and lower extremities during the relevant period. (T. 349, 379, 391, 392, 397, 446, 452, 482, 494, 505, 528, 534, 537, 566). The ALJ also reasonably concluded that Dr. Tangel's check-box form was not supported by any clinical diagnostic findings or narrative for the opined-to limitations. (T. 26). Notably,

Dr. Tangel was unable to definitively determine one way or the other whether plaintiff's impairments were likely to produce "good days" and "bad days." (T. 558).

As to NP Olmstead, the ALJ attributed "some persuasiveness" to her medical source statement. Other than opining that emotional factors did not contribute to the severity of plaintiff's symptoms and functional limitations, NP Olmstead did not render an opinion as to any "significant functional limitations." (T. 17, 25, 544). The ALJ supportably concluded that NP Olmstead's opinion relative to plaintiff's mental health was consistent with the clinical findings on repeat mental status exams. (T. 25, 352, 359, 385, 391, 392, 431, 432, 441).

Plaintiff has failed to identify any evidence in the record demonstrating that her impairments deteriorated after Drs. Miller and Zito issued their respective opinions. To the contrary, the longitudinal record supports and is consistent with their opinions and provided the ALJ with substantial evidence on which to craft the RFC. Accordingly, remand is not warranted.

The court notes that while the ALJ failed to evaluate the persuasiveness of consultative examiner Dr. Fkiaras' opinion, she did discuss his report throughout her decision. *See  Ronald B. v. Comm'r of Soc. Sec.*, 2024 WL 475048, at * 4 (W.D.N.Y. Feb. 7, 2024) (holding that the ALJ's failure to expressly assess the persuasiveness of the consultative examiner's opinion was harmless error where the ALJ discussed the examiner's findings in his decision). The "Second Circuit and this court have found that

remand is not required on the basis that the ALJ did not evaluate an opinion where

evaluation of the opinion would not have changed the outcome." *Sherry T. v. Comm'r*

*of Soc. Sec.*, No. 1:21-CV-00977, 2023 WL 8030129, at *5 (W.D.N.Y. Nov. 20, 2023)

(citing *Zabala v. Astrue*, 595 F.3d 402 (2d Cir. 2010)).

Here, the ALJ's failure to assess the persuasiveness of Dr. Fkiaras' opinion was

harmless error. In formulating the RFC, the ALJ specifically discussed Dr. Fkiaras'

findings. Specifically, the ALJ discussed plaintiff's self-reported daily activities that

"require[d] good use of the upper extremities, such as cooking or doing laundry for 10-

15 minutes at a time, shopping, dressing on a daily basis." (T. 20, *referring to* T. 503).

The ALJ also noted Dr. Fkiaras' physical examination of plaintiff and his findings of

intact hand and finger dexterity bilaterally, 5/5 muscle strength, full range of motion of

upper extremities. (T. 25 *referring to*  T. 25). The ALJ was also cognizant of Dr.

Fkiaras' moderate-marked limitations (T. 506) in crafting the RFC. *See Anthony N. v.*

*Comm'r of Soc. Sec.*, 2022 WL 1679414, at *5 (W.D.N.Y. May 26, 2022) (concluding

that RFC for sedentary work accounted for moderate-to-marked limitations in

prolonged standing, walking, and climbing). Although the ALJ failed to assess the

persuasiveness of Dr. Fkiaras' opinion, his narrative demonstrates that he factored in

the doctor's findings into his RFC. *See Jacqueline C. v. Comm'r of Soc. Sec.*, No. 20-

CV-01606, 2022 WL 4632226, at *6-7 (W.D.N.Y. Sept. 30, 2022) (finding no error

where ALJ failed to evaluate persuasiveness of consultative psychologist's opinion where decision discussed her findings).

Also, the ALJ considered and found "persuasive" (T. 24) the assessments of Drs. Zito and Miller, the two state agency consultants, who themselves considered Dr. Fkiaras' report, in forming their respective medical opinions. (T. 90, 97-8, 105, 108). *See Sherry T.*, 2023 WL 8030129, at *5 (ALJ's failure to evaluate persuasiveness of examiners opinion was harmless where that opinion was considered in administrative findings of state agency consultants on which ALJ relied). Plaintiff has not made any showing that the ALJ's Decision would have been different had she expressly assessed the persuasiveness of Dr. Fkiaras' opinion. Accordingly, remand is not warranted on this basis.

## VI.   PLAINTIFF'S SUBJECTIVE SYMPTOMS

### a.   Legal Standard

The ALJ is obligated to "carefully consider all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including daily activities and the location, duration, frequency, and intensity of their pain or other symptoms." *Debra T. v. Comm'r of Soc. Sec.*, No. 8:16-CV-157 (TWD), 2019 WL 1208788, at *9 (N.D.N.Y. Mar. 14, 2019) (quoting *Del Carmen Fernandez v. Berryhill*, No. 19-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019)) (internal quotations and alterations omitted).

The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged …" 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b). If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier*, 606 F.3d at 49) (alterations in original). If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p). The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *See*

*404.1529(c)(3), 416.929(c)(3)*; *see also Debra N. v. Comm'r of Soc. Sec.*, No. 5:18-CV-215 (ATB), 2019 WL 1369358, at \*7 (N.D.N.Y. Mar. 26, 2019).

The ALJ must provide specific reasons for the determination. *See Cichocki*, 534 F. App'x at 76. However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id*; *see also Del Carmen Fernandez*, 2019 WL 667743 at \*11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)). "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki,* 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

### b. Analysis

Plaintiff's argument that the ALJ failed to consider her subjective complaints is unavailing, and the court finds no error in the ALJ's evaluation of plaintiff's subjective complaints that warrants remand.

The ALJ found that while plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's subjective allegations were not entirely consistent with the longitudinal record and opinion evidence. (T. 21). The ALJ cited medical evidence and opinions which she found persuasive, and that were inconsistent with the limitations suggested by plaintiff's subjective complaints. (T. 22-24). *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence . .

21

. is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect of those symptoms."). Physical exams by FNP Olmstead and Dr. Tangel reported normal extremities, normal range of motion, and normal bilateral strength in plaintiff's upper and lower extremities during the relevant period. (T. 349, 379, 391, 392, 397, 446, 452, 482, 494, 505, 528, 534, 537, 566); *see also* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence is … a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms."). Plaintiff also reported that Gabapentin helped her bilateral hand numbness and tingling. (T. 536, 565); *see also* SSR 16-3p (ALJ may consider a claimant's treatment in evaluating the intensity, persistence, and limiting effects of his symptoms.). Further, plaintiff's subjective complaints were inconsistent with the EMG Study which identified only mild sensorimotor polyneuropathy and mild to moderate bilateral median nerve entrapment neuropathy at the region of the carpel tunnel. (T. 465). As noted, the ALJ also considered the assessments of Drs. Miller and Zito, neither of whom identified any limitations in plaintiff's ability to sit for prolonged periods or use her upper extremities. (T. 24, 88-92, 105-08, 508-10, 553-55). In fact, Dr. Miller opined that there "is a lack of evidence, particularly imaging, to support multiple complaints of musculoskeletal pain, neuropathy, etc." (T. 509). Similarly, the intensity, persistence, and limiting effects of plaintiff's symptoms were inconsistent with Dr. Fkiaras' finding that plaintiff had bilateral grip strength of 5/5 and her ability to utilize a

zipper and tie with both hands. (T. 505). The court finds that the objective medical evidence of record is inconsistent with plaintiff's subjective complaints regarding the extent of her limitations.

In addition to considering the medical evidence of record, the ALJ also considered plaintiff's daily living activities, including her ability to complete minimal household chores (T. 302), care for her cat on a daily basis (T. 294), cook meals three times per day for fifteen minutes (T. 296, 69), wash a few dishes leaning on the sink (T. 68), do laundry (T. 69), sweep (T. 69), do small loads of laundry on a daily basis (T. 69), fold laundry sitting down (T. 68), shop in stores twice per month for about one hour (T. 295), and attend her scheduled medical appointments. Also, the medical sources did not note any ongoing difficulties with plaintiff's personal hygiene or grooming to indicate any chronic difficulty caring for personal needs. Further, plaintiff was primarily responsible for the care of her elderly mother for a period of time (T. 73, 342-43), and for her spouse who was disabled with multiple sclerosis (MS) for many years (T. 56, 294, 591). Plaintiff claimant also engaged in other activities on a recurring basis, including driving a vehicle for short distances when she had to (Exhibit 4E, pp. 2, 3, and 10). *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) ("Factors relevant to your symptoms" include "[y]our daily activities").

Accordingly, remand is not warranted because the ALJ relied upon substantial evidence in determining that plaintiff's statements concerning the intensity, persistence

and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.

## VII.  **STEP FIVE**

Plaintiff's argument that the hypothetical provided by the ALJ to the vocational expert at step five of the sequential evaluation failed to accurately reflect her physical impairments is unavailing. It is well settled that the Commissioner may rely on a vocational expert's testimony concerning the availability of jobs suited to a hypothetical person's capabilities so long as the hypothetical is based on substantial evidence. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983); *see also Mancuso v. Astrue,* 361 F. App'x 176, 179 (2d Cir. 2010) (the Commissioner may rely on a VE's testimony concerning the availability of jobs suited to a hypothetical person's capabilities so long as they hypothetical is based on substantial evidence). As the ALJ's hypothetical mirrored plaintiff's RFC, which, as previously discussed, was supported by substantial evidence, the court concludes that the ALJ's reliance on the vocational expert's testimony in concluding that plaintiff was not disabled was proper.

**WHEREFORE,** based on the findings above, it is

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 13, 14) is **DENIED**; and it is further

**ORDERED**, that defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED**, that the decision of the Commissioner be **AFFIRMED**, and plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY**.

Dated:  November 21, 2024

Mitchell J. Katz
U.S. Magistrate Judge